PERSONAL SERVICE INSURANCE COMPANY, APPELLANT, *v.* CALL, CHIEF, APPELLEE.

(No. 82AP-786—Decided March 29, 1983.)

*Mr. William C. Ailes,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Ms. Renee J. Houser,* for appellee.

WHITESIDE, P.J. The Personal Service Insurance Co. (hereinafter "PSI") appeals from a judgment of the Franklin County Court of Common Pleas affirming a decision of the Reclamation Board of Review ("Board of Review") and raises two assignments of error as follows:

"1. The decision and judgment of the Trial Court is contrary to law.

"2. The decision and judgment of the Trial Court is manifestly against the weight of the evidence."

The Board of Review affirmed an order of the Chief of the Division of Reclamation ("chief"), Department of Natural Resources, forfeiting a reclamation performance bond for failure of the operator to properly reclaim all the land it had strip mined, which land was partially bonded by PSI as surety.

By its first assignment of error, PSI contends that the trial court's decision, affirming the Board of Review's decision, is contrary to law because the order of the chief failed to make a finding as to the number and location of fully reclaimed acres and failed to release the reclamation performance bond covering those acres as required by R.C. 1513.16(F).

Although since amended, R.C. 1513.16(F)[1] stated, in pertinent part, at the time in question:

"Upon issuing an order under division (D) or (E) of this section declaring that the operator has failed to reclaim, the chief shall make a finding as to the number and location of the acres of land which such operator has failed to reclaim in the manner required by Chapter 1513. of the Revised Code, and the amount of the estimated cost to the state to perform reclamation on such acres as determined by the chief at the time of application. The chief shall order the release of that proportion of the bond, cash, or certificates of deposit which are on deposit to assure reclamation of those acres which he finds to have been reclaimed in the manner required by Chapter 1513. of the Revised Code. Such release shall be ordered in the same manner as in the case of other approval of reclamation by the chief, and the treasurer shall proceed as in such case. * * *"

---

[1] All references herein are to R.C. 1513.16 as it read prior to its amendment effective September 1, 1981.

The Division of Reclamation ("division") interpreted this statute to mean that, where a mining operation continues for more than one year under a three-year strip-mining permit, such as the one issued to the operator herein, partial releases of bond will be made when an entire area mined within one year, as shown on annual maps submitted by the operator, has been reclaimed. However, when, as in this case, the operator finishes mining within one year and his annual map required by R.C. 1513.09(C) is also his final map required by R.C. 1513.09(D), the entire bond will be forfeited if all the acres are not reclaimed since, according to the division, the map is the "key" to release. The division reaches this anomalous result because the annual or final map is referred to in R.C. 1513.16(D) and (E), prescribing procedures for release of bond where satisfactory reclamation is achieved, and R.C. 1513.16(F) states that release where satisfactory reclamation is not achieved "* * * shall be ordered in the same manner as in the case of other approval of reclamation by the chief. * * *"

R.C. 1513.16(D) provides for a request for inspection of the reclamation which must include:

"(1) The location of the area and number of acres;

"(2) The license number and permit number;

"(3) The amount of bond, cash, or certificates of deposit on deposit to assure reclamation of such area;

"(4) The results of tests on the soil of the reclaimed area for such vegetation-sustaining factors as the chief shall prescribe by rule."

However, R.C. 1513.16(D) further requires the chief to "make an inspection and evaluation of the reclamation of the area." Then, if the chief "approves the reclamation other than planting," the chief "shall issue an order to the operator and the operator's surety releasing them from liability for one-half the total amount

of their surety bonds * * *." This was done in this case and one-half of the bond was released.

R.C. 1513.16(E) relates to the planting and provides for the filing of request for release of bond after planting has been completed and the growing season has terminated and that the request shall state:

"(1) The location of the area and the number of acres;

"(2) The license number and permit number;

"(3) The amount of bond, cash, or certificates of deposit on deposit to assure reclamation of such area;

"(4) The type and date of planting of vegetative cover, the degree of success of growth, and results of tests on the soil of the reclaimed area for such vegetation-sustaining factors as the chief shall prescribe by rule."

Again, the chief is required to make an inspection and evaluation and to make a determination concerning release of the remainder of the bond. If he approves, notice by publication is given and persons "claiming to be deprived of a right or protection afforded him by law" may appeal.

If, as in this case, the chief does not approve the reclamation, he is required to enter an order "stating the reasons for unacceptability, ordering further actions to be taken, and setting a time limit for compliance." R.C. 1513.16(E).

It is at this point that R.C. 1513.16(F) comes into play and requires the chief to make "a finding as to the number and location of the acres of land which such operator has failed to reclaim in the manner required by Chapter 1513."

R.C. 1513.16(F) expressly requires a determination by the chief as to which acres shown on the annual or final maps have been reclaimed, and which have not, in considering a request for partial or full release of the bond. R.C. 1513.16(F) further expressly provides that "[the] chief shall order the release of that proportion of the bond, cash, or certificates of

deposit which are on deposit to assure reclamation of those acres which he finds to have been reclaimed in the manner required by Chapter 1513."

The statutory language does not warrant the division's construction of R.C. 1513.16(F). Not only does such construction ignore the plain language of the statute requiring the chief to release the reclamation performance bond covering those acres which have been fully reclaimed at the time of bond forfeiture with respect to the remainder, but it also penalizes those operators who finish strip mining in less time than allowed by law. Under the division's interpretation of R.C. 1513.16(F), an operator who finishes strip mining within one year and reclaims all but a tiny portion of the affected land will forfeit his entire reclamation performance bond. Such an inequitable result cannot be accorded a statute except by express legislative enactment. See R.C. 1.47(C). It is also inconsistent with the language of former R.C. 1513.16(F), which permitted forfeiture of the "remaining portion" of cash or certificates of deposit. We, therefore, reject the division's construction of R.C. 1513.16(F) and find PSI's first assignment of error well-taken insofar as the chief's order, affirmed by the Board of Review and the trial court, failed to make the requisite determination under R.C. 1513.16(F) as to fully reclaimed acreage before forfeiting the entire reclamation performance bond. Prejudice, however, depends upon whether there is evidence of fully reclaimed acres on the land partially bonded by PSI, since there may be instances where the chief may properly find that none of the affected area has been fully reclaimed. See *Tiger Corp.* v. *Call* (1982), 8 Ohio App. 3d 158.

The final map herein shows that a total of 27.7 acres was mined within a one-year period, under a three-year strip-mining permit. The affected area included a county road with additional affected areas on either side, some of which were outside the permitted area. No issue with respect to exceeding permit limits was determined by the chief's order, and such issue has not been raised upon appeal and, thus, is not before us.

To insure completed reclamation of the permit area, a total bond of $44,320 was deposited with the division at the estimated rate of $1,600 per acre. Fifteen thousand two hundred dollars of the security for more than nine acres on the west side of the road was in the form of certificates of deposit assigned to the division. The other $29,120, security for 18.2 acres on the eastern and western sides of the road, was in the form of three surety contracts written by PSI.

Each bond specifically covered a designated geographical area within the total permit area. When the operator successfully completed the first phase of a two-part reclamation plan, one-half the total bond was released pursuant to R.C. 1513.16(D). The division credited the entire release against the surety obligation of PSI. This left bond consisting of $15,200 in certificates of deposit and $6,960 in surety contracts to guarantee the second phase of reclamation. In the order appealed from, the chief declared this entire remaining bond forfeited for failure of the operator to complete the final phase of reclamation.

By both its assignments of error, PSI contends that the order of the chief forfeiting the remaining surety bond, which was affirmed by the Board of Review and the court of common pleas, was contrary to law and against the manifest weight of the evidence since the major portion of the strip-mined land had been fully reclaimed, and the remaining $15,200 in certificates of deposit was more than sufficient to cover any required reclamation. No issue has been raised with respect to first releasing the surety. See R.C. 1341.04.

There appears to be no dispute as to the entire area east of the county road, consisting of approximately six acres,

having been fully reclaimed at the time of the bond forfeiture.[2] This area was entirely bonded by surety contracts written by PSI. The evidence is unclear, on the other hand, as to exactly where the problems occurred on the western side of the road, which was bonded by a combination of certificates of deposit and surety contracts in certain designated areas.

Where, as here, the reclamation bond pertains to specific portions of the permit land, the chief must release the bond covering those fully reclaimed areas under R.C. 1513.16(F). The chief erred by not releasing PSI's surety bond covering the six acres on the eastern side of the road, or $4,800 worth of surety bond at the estimated rate of $800 per acre, to complete reclamation subject to the notification and appeal provisions of former R.C. 1513.16(E).

Therefore, to the extent that the court of common pleas affirmed the decision of the Board of Review, affirming the order of the chief which failed to release PSI's surety bond covering the six acres on the eastern side of the road, the first and second assignments of error are well-taken. Release of the surety relating to the rest of the permit area, however, cannot be determined without resolution of the question of whether any of those areas has been fully reclaimed. See R.C. 1513.16(F).

For the foregoing reasons, both assignments of error are sustained for the reasons and to the extent indicated; the judgment of the Franklin County Court of Common Pleas is reversed; and this cause is remanded to that court with instructions to reverse the order of the Board of Review and to remand this cause to that board for further proceedings in accordance with law consistent with this opinion.

_____

[2] R.C. 1513.18 makes it clear that a true forfeiture is involved by providing for disposition of any remaining forfeited funds.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and McCORMAC, JJ., concur.